Philip R. Schatz (PS 6158)                                  JURY TRIAL REQUESTED
WROBEL & SCHATZ LLP
Attorneys for Defendants
1040 Avenue of the Americas, 11th Floor
New York, New York 10018-2703
(212) 421-8100

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x

DENNIS SPINA,

                        Plaintiff,                      1:06-cv-0818 (Ross, J.)

      -against-
                                      **ANSWER,**

DENTON JONES and CROSS COUNTRY        **COUNTERCLAIM,**
CAPITAL PARTNERS, LP,                    **AND THIRD PARTY**
                                          **COMPLAINT**

                        Defendants, Interpleader
                        Plaintiffs, and Third-Party
                        Plaintiffs,

      -against-

DENNIS SPINA, MARK HOTTON,
WQN INC., and OPPENHEIMER & CO., INC.,

                        Interpleader Defendants,

      -and-

MARK HOTTON, RAMESH AKELLA,
and PHOENIX CAPITAL,

                        Third-Party Defendants.

-------------------------------------------------------------------------x

      Defendants Denton Jones and Cross Country Capital Partners LP ("Cross Country"), by

and through their attorneys, Wrobel & Schatz LLP, in response to the complaint herein, answer

1

as follows:

## Preliminary Statement

In this action, plaintiff Dennis Spina contends that he is owed a return of $1 million that he claims to have sent defendant Cross Country for the purchase of stock in a company called VOIP, Inc. He attaches wire transfers which he claims demonstrate that money was transferred from his account to Cross Country's account. However, Cross Country's records show quite a different set of circumstances, and suggest that Mr. Spina's claimed transfer is part of a larger scheme by Mark Hotton, who was upon information and belief both Cross Country's and Mr. Spina's broker, to cover-up massive self-dealing, fraud, and misappropriation in his accounts. As a result of Mr. Hotton's malfeasance, defendant Cross Country has received multiple, contradictory claims for the sum of $1 million (the "Balance")[1] on deposit at Oppenheimer & Co., Inc. ("Oppenheimer"), and anticipates receiving additional such claims. Cross Country will deposit the Balance into the Court pending resolution of these competing claims. Accordingly, statutory interpleader is appropriate pursuant to 28 USC §1335.

In addition, Cross Country is permitted to assert breach of contract and fraud claims against the third-party defendants who created and directed the fraud that gave rise to the competing claims.

---

[1] On or about February 6, 2006, Cross Country directed Oppenheimer to "freeze" the account to prevent Mr. Hotton from making any additional transfers from the account, and repeated this request once receiving notice of potential claims against $1 million in the account. By letter dated March 13, 2006 (Exhibit A hereto), Oppenheimer confirms that the account has been frozen and has a balance in excess of $1 million.

## ANSWER

1.      Deny paragraph 2. Cross Country is a Delaware limited partnership.

2.      Deny paragraph 3.

3.      Deny paragraph 4.

4.      Deny paragraph 5 to the extent it alleges "solicits business and clients" in the State of New York or otherwise, but admits that Cross Country has an account with Oppenheimer Funds.

5.      Deny paragraph 6.

6.      Deny paragraph 7.

7.      Deny paragraph 8, except admit that defendants have not purchased VOIP stock on plaintiff's behalf.

8.      Deny knowledge or information sufficient to form a belief as to the truth or falsity of paragraph 9.

9.      Deny paragraph 10.

10.      Deny paragraph 11.

11.      State that paragraph 12 is a summary paragraph as to which no additional response is necessary, but, to the extent a response is necessary, deny paragraph 12.

12.      Deny paragraph 13.

13.      Deny paragraph 14.

14.      State that paragraph 15 is a summary paragraph as to which no additional response is necessary, but, to the extent a response is necessary, deny paragraph 15.

15.     Deny paragraph 16.

## AFFIRMATIVE DEFENSES

16.     Plaintiff has failed to state a claim upon which relief may be granted.

17.     Plaintiff has failed to state a claim for replevin or for conversion, because money

is fungible and the wire transfer in question was deposited into an undifferentiated account.

18.     Plaintiff's claim is barred by the doctrine of unclean hands.

19.     Plaintiff's claim is barred by the doctrine of estoppel, because defendants

reasonably relied to their detriment upon statements by plaintiff and/or plaintiff's agents.


I

## COUNTERCLAIM AND THIRD PARTY COMPLAINT
## FOR INTERPLEADER

### As and for a Counterclaim Against Mr. Spina and an Interpleader Complaint against Mark Hotton, Oppenheimer & Co., and WQN, Inc.

### Parties and Jurisdiction

20.     This Court has jurisdiction pursuant to 28 USC 1335 because there exist two or

more adverse claimants, of diverse citizenship, who are claiming or may claim to be entitled to

the Balance.

21.     Counterclaimant and third-party plaintiff Cross Country, who hereby asserts a

claim to the Balance, is a Delaware limited partnership with its principal place of business in

Dallas, Texas.

22.     Upon information and belief, counterclaim defendant Dennis Spina, who has

asserted a claim to the Balance, is an individual residing in the State of Florida.

23.     Upon information and belief, third-party defendant WQN, Inc. ("WQN"), who

4

has asserted a claim to the Balance, is a Delaware corporation with its principal place of business in New York, New York.

24.    Upon information and belief, third-party defendant Mark Hotton is a resident of the State of New York.

25.    Upon information and belief, Ladenburg Thalmann & Co. ("Ladenburg") is a Delaware corporation with its principal place of business in New York, New York.

26.    Upon information and belief, third-party defendant Oppenheimer is a Delaware corporation with its principal place of business in New York, New York. Oppenheimer is named as an interpleader defendant because it has current custody of the Balance, until Cross Country is able to deposit it with the Court.

27.    During the time relevant to this interpleader counterclaim and third-party complaint, Mr. Hotton was employed by Ladenburg and Oppenheimer.

## Conflicting Claims to Cross Country's Oppenheimer Account

28.    As confirmed in Exhibit A, at defendants' request, Cross Country's account at Oppenheimer has been frozen and has a balance of $1,003,420.52.

29.    Mr. Spina is not the only person or entity who has made or may make a claim against the Balance:

   a.   Cross Country has a claim against the Balance, which Mr. Hotton told Cross Country was part of the return of $5,676,300 due to Cross Country from a stock purchase escrow – monies that, it now appears, Mr. Hotton may have stolen or used to pay obligations to other customers.

   b.   WQN has a claim against the Balance, which it claims was misappropriated by

Mr. Hotton in connection with certain fraudulent real estate transactions.

c.   Given Mr. Hotton's apparent predilection for transferring client funds based upon conflicting and different excuses to the transferor and transferee, there exist upon information and belief other customers of Ladenburg and Oppenheimer, yet unknown, who may have claims against the Balance.

**Mr. Spina's Claim and Record Ownership Interest in Cross Country**

30.   According to Mr. Spina's complaint, he is the rightful owner of $1 million currently in Cross Country's possession, which he claims was wired to Cross Country on January 18, 2006 to purchase VoIP stock.

31.   It may be worth noting that Mr. Spina (doing business as Taylor Rose Equities, LLC) is carried on Cross Country's books (due to representations by Mr. Hotton) as an investor in Cross Country in the amount of $1,150,000. It does not appear from his complaint that Mr. Spina is aware that he is a limited partner of Cross Country, and this may be yet another fiction created by Mr. Hotton.

**WQN's Claim**

32.   According to a complaint filed by WQN in the Supreme Court of the State of New York captioned WQN, Inc. v. Mark C. Hotton et al. (Exhibit B hereto), during the time he was employed by Ladenburg and Oppenheimer Mr. Hotton engaged in business dealings and transactions that were fraudulent. Among other things, Mr. Hotton's fraudulent actions included:

a.   Manipulating transfers and deposits to create inflated account balances;

b.   Making unauthorized transfers to persons and entities controlled by Mr. Hotton;

c.   Manipulating transfers between clients, in connection with which Mr. Hotton

would tell the sending client the money was for one purpose and tell the receiving client the money was for another and different purpose.

    d.   Creating false and fraudulent documentation concerning his actions.

33.    WQN has further alleged that monies belonging to WQN have been transferred to Cross Country's account and that these monies belong to WQN.

34.    By letter dated February 22, 2006 (Exhibit C hereto), WQN's counsel demanded that Cross Country return $3.6 million that allegedly has been wired to Cross Country that belongs to WQN. This demand necessarily includes the Balance.

## Cross Country's Claim

35.    If the allegations of Mr. Spina's complaint are true, Mr. Hotton gave conflicting explanations to Mr. Spina and to Cross Country for the transfers into Cross Country's account at Oppenheimer in January 2006. Mr. Hotton told Cross Country, and Cross Country believed, that the deposits into its account in January reflected the return of an escrow deposit in the amount of $5,676,300 from a transaction that Mr. Hotton had brokered in November 2004.

36.    In that transaction, Cross Country thought it purchased in a "PIPE" transaction[2] $5,676,300 worth of privately held shares of a public company called Websense, Inc. at $27 per share. Hotton told Cross Country that the money would be held in escrow until the shares were registered, which was supposed to occur in 90 – 120 days but in any event no longer than 360

---

[2] PIPE transactions – short for "private investment in public equities" – are private offerings in which accredited investors purchase restricted, unregistered shares in public companies. According to a recent press release by the National Association of Securities Dealers, "[a]buses in PIPE transactions were a new area of focus for NASD investigators in 2005." Upon information and belief, the Websense transaction is not the only fraudulent PIPE transactions created by Mr. Hotton, nor is Mr. Hotton the sole perpetrator of the frauds.

days, at which time they would be delivered to the escrow agent, the escrow released, and Cross Country would have the benefit of the intervening appreciation of the share value. Attached as Exhibit D are two escrow statements sent to Cross Country by Hotton on his employer's letterhead reflecting an escrow balance of $5,676,300 relating to the Websense transaction. Upon information and belief, these statements are fraudulent, and the escrow account reflected in the statements never existed.

37.    In October 2005, Mr. Jones met with Ramesh Akella, who had arranged the Websense PIPE transaction with Mr. Hotton, and Mr. Hotton at the St. Regis Hotel in Manhattan and raised concerns about the non-delivery of the Websense shares. Mr. Akella told Mr. Jones to "relax" and "let it happen." Mr. Akella assured Mr. Jones that he could be relied upon and promised that the shares would be delivered.

38.    In November 2005, Mr. Hotton arranged for putative loans to Cross Country in the aggregate amount of $2,610,000 against the pending Websense closing. The loans were disbursed in installments during November and December 2005. According to Mr. Hotton, the source of the loans was Dennis Spina, doing business as Pioneer Investments, who allegedly received an immediate return of $110,000 for these loans. These alleged loans were arranged by Mr. Hotton by phone calls to Denton Jones, and then confirmed in loan authorizations and other documents created by Mr. Hotton and faxed to Cross Country for execution. Copies of several of the loan authorizations are annexed hereto as Exhibit E.

39.    At year end 2005, Websense shares were trading for approximately $60 per share, making Cross Country's investment worth around $12 million.

40.     Cross Country's concern that the shares had not been delivered as promised mounted, and Cross Country demanded a meeting with Mr. Hotton and Mr. Akella which took place on or about Monday, January 9, 2006 at the Grand Havana Room in New York City.

41.     Mr. Akella opened the meeting by stating that he had money to invest in Cross Country and that he also had a new PIPE transaction to discuss. He told Mr. Jones that he had received or would receive a return of his Websense investment, and said "lets go make some more money" in other investments. Mr. Jones objected that Mr. Akella and Mr. Hotton had repeatedly and emphatically promised that the shares would be delivered, and that it was not right that Cross Country did not receive the shares as promised. Mr. Akella responded that he would "do his magic" and try to work something out, and report back to Mr. Jones by Monday or Tuesday of the following week, January 16 – 17, 2006. At the conclusion of the meeting, Mr. Jones introduced Mr. Akella to representatives of WQN, who were in an adjoining room on other business.

42.     In a phone conversation on January 11, 2006, Mr. Hotton requested that Cross Country transfer $1,377,000 in connection with Mr. Hotton's real estate venture Park Avenue Associates. Mr. Hotton told Mr. Jones that the escrow had "settled," that all of Spina's loans had been repaid, and that the remaining balance of $3,101,318 was "pending" return to Cross Country's account. In response to Mr. Jones' request that he be provided with a verification of the return of the escrow, Mr. Hotton faxed a document, curiously formatted like an email, to Mr. Jones at the Grand Havana Room in New York City that stated that the return of the escrow was pending (Exhibit F). In reliance on this representation by Mr. Hotton, Cross Country authorized the transfer of $1,377,000 (Exhibit G).

43.     On Friday, January 13, 2006, during an in-person conversation at the Grand Havana Room in New York City, Mr. Hotton admitted to Mr. Jones that the Websense transaction was a fraud. He stated that he had manufactured the escrow documents that he had been providing over the past year. He stated that Akella and his associates, who arranged the transaction, never really owned the shares. He stated that the transaction failed because the increase in value of the shares prevented him, Akella and the other participants from ever obtaining the shares. He said he felt terrible and broke down in tears. He asserted that the initial investment had been returned, and promised to pay at least some of the lost profits.

44.     On or about January 26, 2006, Mr. Jones and Mr. Hotton met again to follow up on the earlier conversation about the Websense fraud. Mr. Hotton promised to pay $3 million in recognition of the profits that Cross Country should have received from the transaction (Exhibit H). Mr. Hotton further agreed to assume payment of a $750,000 loan allegedly due to Mr. Spina (Exhibit I). At the time of these promises, Cross Country was not yet aware that the escrow balance had not been and would not be returned, or that Mr. Spina would assert a claim against one of the transactions that Mr. Hotton had represented was a partial return of the escrow.

45.     Upon information and belief, the Websense transaction was fraudulent ab initio, and that the escrow was used by Mr. Hotton and/or Akella, either to fund obligations to other customers, to fund their own investments, or for their own private use.

46.     Cross Country does not know whether Mr. Spina is a victim of Mr. Hotton's fraud, or a participant in it. Mr. Spina's complaint was prepared by an attorney regularly employed by Mr. Hotton for his business transactions. As suggested above and in the annexed

documents, many of which were created by Mr. Hotton, that complaint does not appear to accurately reflect the relationships between Cross Country and Mr. Spina.

**Other Potential Claims.**

47.     Upon information and belief, Mr. Hotton caused or made numerous transfers into and out of Cross Country's accounts that were fraudulent to Cross Country and/or to the person or entity sending or receiving the transfer.

48.     As a result, other customers of Mr. Hotton may make claims against the monies on deposit at Oppenheimer.

49.     By reason of these conflicting claims of Cross Country, Spina, and WQN to the monies on deposit at Oppenheimer, and the potential claims of persons and entities unknown, Cross- and Third-Party Plaintiff Cross Country is in great doubt as to which person or entity is entitled to receipt of and/or to be paid the Balance.

## II

### THIRD PARTY COMPLAINT FOR
### BREACH OF CONTRACT AND FRAUD

#### As and for a Third Party Complaint Against Mark Hotton, Ramesh Akella, and Phoenix Capital

#### Parties and Jurisdiction

50.     Third Party Plaintiff Cross Country is a Delaware limited partnership with its principal place of business in Dallas, Texas.

51.     Upon information and belief, Third Party Defendant Mark Hotton is a resident of the State of New York domiciled in Nassau, New York.

52.     Upon information and belief, Third Party Defendant Ramesh Akella is a resident

11

of the State of New York domiciled in New York, New York.

53.      Upon information and belief, Third Party Defendant Phoenix Capital[3] is a New

York corporation which is the alter ego of defendant Ramesh Akella.

54.      This Court has jurisdiction because the parties are diverse and because the amount

in controversy exceeds $75,000, exclusive of interest and costs.

55.      Venue is appropriate in this district pursuant to 28 USC 1391, because one of the

defendants resides in this district and because a substantial part of the events or omissions giving

rise to the claim occurred; and because the "Escrow Agreement" dated as of November 1, 2004

provides that the United States District Court for the Eastern District of New York shall have the

"sole and exclusive jurisdiction" for any proceeding "relating to or arising from" the Escrow

Agreement.

56.      This third party complaint arises from a common nucleus of operative fact

involving many of the same parties and events as the defenses and interpleader cause of action

set forth above.

### [First Cause of Action: Breach of Contract]

57.      On or about November 1, 2004, third party defendants Hotton, Akella and

Phoenix circulated a Confidential Offering Memorandum for a Private Placement in the stock of

Websense, Inc.

58.      In reliance upon the Confidential Offering Memorandum and other

representations by defendants, Cross Country invested the sum of $5,676,300 in that private

---

[3] The Websense escrow agreement, drafted upon information and belief by Akella and/or Hotton,
states that Phoenix Capital is a New York corporation. We have not been able to confirm that
designation through searches of the Westlaw corporate database.

placement. This investment by Cross Country created a binding and enforceable contract between the parties.

59.     Cross Country has performed all of its obligations under the contract.

60.     Defendants Hotton, Akella and Phoenix have breached their obligations under the contract by, inter alia, failing to deliver the shares as contemplated by the contract.

61.     As a result of the breach by defendants Hotton, Akella and Phoenix, Cross Country has been damaged in an amount to be determined but in no event less than $12 million ($12,000,000).

**[Second Cause of Action: Fraud]**

62.　　Upon information and belief, the Websense transaction dated on or about November 1, 2004 was fraudulent, and entered into by defendants Hotton, Akella and Phoenix with no intent of performing.

63.　　Upon information and belief, the Websense transaction was part of a joint scheme to defraud entered into by defendants Hotton, Akella, and Phoenix and others against Cross Country and others.

64.　　Upon information and belief, the fraud included some or all of the following:

　　a.　Defendants did not have any right to sell the subject shares;

　　b.　Defendants did not take all necessary steps necessary to sell the subject shares;

　　c.　Defendants did not deposit money into escrow;

　　d.　Defendants entered into the transaction with the expectation that the shares would decline in value, in which case they would buy the shares on the open market at substantially less than the amount paid by plaintiff, deliver them to plaintiff, and pocket the difference.

　　e.　In furtherance of the frauds herein, defendants created and distributed materially false documents over state lines, including, but not limited to, documents that purported to, but did not, originate with Ladenburg Thalmann and Oppenheimer.

65.　　The Websense transaction was only one of several fraudulent transactions, including but not limited to a transaction involving Able Laboratories, perpetrated by defendants upon Cross Country.

66.     Cross Country reasonably relied upon the representations of Hotton, Akella and Phoenix concerning the transactions.

67.     As a result of the fraud of Hotton, Akella and Phoenix, Cross Country has been damaged in an amount to be determined at trial but no less than $8 million ($8,000,000).

WHEREFORE, defendants Cross Country and Jones and cross-claimant and third-party plaintiff Cross Country demand that the Court adjudge as follows:

a. That plaintiff's claim be dismissed in its entirety, with prejudice, without damages to plaintiff and with costs and disbursements, including attorney's fees, to defendants;

b. On the interpleader counterclaim and interpleader cause of action of the third party complaint, that neither plaintiff Spina nor third-party defendants WQN or Hotton are entitled to recover the Balance from Cross Country and/or Jones, and that the Balance therefore belongs to Cross Country;

c. On the interpleader counterclaim and interpleader cause of action of the third party complaint, that plaintiff Spina and third-party defendants WQN and Hotton be restrained from instituting any action against Cross Country and/or Jones for recovery of the Balance or for any part thereof;

d. On the interpleader counterclaim and interpleader cause of action of the third party complaint, that if the Court shall determine that the Balance is the result of fraud on the part of Hotton as to which no other claiming party is responsible, that the Court determine which of the conflicting claimants is entitled to the Balance and in what amounts and proportions, and that cross- and third-party plaintiffs thereafter be discharged from all liability in the premises except to the persons or entities whom the Court shall adjudge entitled to the Balance; and

e. On the breach of contract cause of action of the third party complaint against Hotton, Akella, and Phoenix, that Cross Country be awarded monetary damages

16

in an amount to be determined but in no event less than $12,000,000 jointly and severally; and

f. On the fraud cause of action of the third party complaint against Hotton, Akella and Phoenix, that Cross Country be awarded monetary damages in an amount to be determined but no less than $8,000,000 jointly and severally, plus punitive damages and attorney's fees; and

g. That defendants and third party plaintiff shall recover interest, costs and disbursements.

h. Pursuant to Fed. R. Civ. P. 38, defendants Cross Country and Jones request a jury trial of any claims and issues triable of right by a jury.

Dated: New York, New York
        March 15, 2006

WROBEL & SCHATZ LLP

By: _____
    Philip R. Schatz (PS 6158)
Attorneys for Defendants
1040 Avenue of the Americas, 11th Floor
New York, New York 10018-2703
(212) 421-8100

To:   SPENCE & DAVIS LLP
      Brian J. Davis, Esq.
      Attorney for Plaintiff
      666 Old Country Road, Suite 300
      Garden City, NY 11530
      (516) 542-0249
      *Attorneys for Plaintiff Dennis Spina*

      MARK HOTTON
      164 Secatogue Lane West
      West Islip, NY 11795

OPPENHEIMER & CO., INC.
125 Broad Street
New York, NY 10004

WQN, Inc.
c/o Wollmuth Maher & Deutsch LLP
500 Fifth Avenue
New York, NY 10110
*Attorneys for WQN, INC.*

RAMESH AKELLA
525 E. 72nd St.
Apt. 34I
New York, NY 10021-9611

PHOENIX CAPITAL
c/o Ramesh Akella
525 E. 72nd St.
Apt. 341
New York, NY 10021-9611